IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHARON KULINA and | : | |
| DALE DURDOCK, | : | Civil Action No. 08-cv-1617 |
|     Plaintiffs | : | (Chief Judge Yvette Kane) |
| | : | |
| v. | : | |
| | : | |
| UGI, HANDWERK CONTRACTORS, | : | |
| HUMMELSTOWN BOROUGH, | : | |
| MICHAEL O'KEEFE, BRADLEY | : | |
| MILLER, and DETECTIVE GREGORY | : | |
| DAY, | : | |
|     Defendants | : | |

## MEMORANDUM

Before the Court is Defendant Hummelstown Borough, Michael O'Keefe, and Bradley Miller's (collectively "Defendants") motion to dismiss. (Doc. No. 13.) For the reasons that follow, the Court grants in part and denies in part Defendants' motion.

## BACKGROUND

On May 21, 2008, at approximately 1 p.m., a severed gas line caused an explosion, which in turn destroyed the property of Plaintiffs Sharon Kulina and Dale Durdock. (Comp. ¶¶ 1, 12, & 18.) Plaintiffs allege that the explosion resulted when from Defendant Handwerk excavated near the front lawn and sidewalk of Plaintiffs' property and struck and severed a gas pipeline. (Comp. ¶ 16.) On severing the pipeline, Defendant Handwerk left the scene, gas rose into the building, and the building exploded. (Comp. ¶¶ 17-18.) Plaintiffs estimate that the value of their property and business located thereon was approximately $650,000. (Comp. ¶ 13.)

Plaintiffs were not at the property when the explosion occurred, but arrived at the location sometime after the explosion. (Comp. ¶ 23.) Plaintiffs were visibly upset by the damage

to their property, and were detained for questioning by Defendant Gregory Day, a police officer purportedly representing Derry Township. (Comp. ¶ 25.) Unnamed Defendant John Doe allegedly took Plaintiffs into custody, and Defendant Day threatened them with incarceration if they failed to cooperate in his questioning. (Comp. ¶ 11, 26.) After the explosion, Defendants UGI and Handwerk refused the requests of Defendant Hummelstown Borough to pay for the clean-up costs on the site. Plaintiffs, however, were coerced into signing a personal commitment obligating them to pay $19,400 to clean the site and to remove the resulting nuisance. (Comp. ¶¶ 28-31.) To further ensure payment, Plaintiffs were criminally charged by Defendants Michael O'Keefe and Bradley Miller for failure to abate the nuisance. (Comp. ¶ 32.) Defendants O'Keefe and Miller then conducted a "media blitz," in which they described Plaintiffs as "negligent and "uncooperative." (Comp. ¶¶ 36-37.)

Plaintiffs filed this action in federal court on August 28, 2008 alleging federal civil rights violations and state negligence, false light, and defamation claims. All Defendants have filed motions to dismiss portions of the complaint except Defendant Day. Due to the number of issues and Defendants involved, the Court will address only Defendant Hummelstown, O'Keefe, and Miller's motion in this memorandum.

**STANDARD OF REVIEW**

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint, Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993), and is properly granted when, taking all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990). The burden is on the moving party to show that no claim has been stated. Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir.

1980).  Thus, the moving party must show that Plaintiff has failed to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist." Kost, 1 F.3d at 183 (citations omitted).  A court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906, 908 (3d Cir. 1997). Indeed, the Supreme Court has recently held that while this standard does not require "detailed factual allegations," there must be a "'showing,' rather than a blanket assertion of entitlement to relief . . . '[F]actual allegations must be enough to raise a right to relief above the speculative level'" in order to survive a 12(b)(6) motion to dismiss.  Phillips v. County of Allegheny, 515 F.3d 224, 231-32 (3d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007)).

**DISCUSSION**

    **A. Local Agency Immunity**

Defendant Hummelstown first argues that the negligence actions against it should be dismissed because it is immune from suit. Specifically, Defendant Hummelstown argues that it is a local agency entitled to immunity and that no exception applies to the situation in the case at bar. Plaintiffs, on the other hand, assert that both the "utility service facilities" exception and the "real property exception" apply, therefore preventing application of local agency immunity to Defendant Hummelstown. The Court finds that local agency immunity applies.

Both parties appear to agree that the Borough of Hummelstown is a "local agency" entitled to governmental immunity from state law claims pursuant to the Political Subdivision Tort Claims Act. 42 Pa. Const. Stat. Ann. § 8541. Also agreed is that there are limited exceptions to the immunity, as enumerated in § 8542. The relevant exception to immunity read:

>   (3) Real property.--The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. As used in this paragraph, "real property" shall not include:
>
>   (i) trees, traffic signs, lights and other traffic controls, street lights and street lighting systems;
>   (ii) facilities of steam, sewer, water, gas and electric systems owned by the local agency and located within rights-of-way;
>
>   (iii) streets; or
>
>   (iv) sidewalks.
>
>   . . .
>
>   (5) Utility service facilities.--A dangerous condition of the facilities of steam, sewer, water, gas or electric systems owned by the local agency and located within rights-of-way, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa. Const. Stat. Ann. § 8542

Reviewing these two exceptions, it is clear that the real property exception does not apply to the claims of this complaint because Plaintiffs do not allege that Defendant Hummelstown possessed or owned any real property that caused the injury. The term "possession" requires total control over the property; limited control for a limited period is insufficient to create liability. Gramlich v. Lower Southampton Twp., 838 A.2d 843, 848 (Pa. Commw. Ct. 2003). Also, the term "real property" specifically excludes gas systems owned by the agency, and therefore would not apply even if Plaintiffs were to revise their complaint to allege an easement or

possession over the gas pipelines.

To avoid application of local agency immunity under the utility service exception, Plaintiffs must allege that Hummelstown not only own the gas line, but that it had actual or constructive notice of a dangerous condition early enough that it could have taken protective measures to prevent the injury. Id. Plaintiffs do not so allege. Moreover, Plaintiffs do not even allege that Hummelstown owns the gas pipeline, a statutory prerequisite. See Jackson v. City of Philadelphia, 782 A.2d 1115 (Pa. Commw. Ct. 2001) *rev'd on other grounds* Jackson v. City of Philadelphia, 851 A.2d 834 (Pa. 2004).

Accordingly, Defendant Hummelstown is entitled to immunity and Plaintiffs' claim of negligence against Defendant Hummelstown is dismissed. Regarding Plaintiffs' request to amend, the Court notes that simply amending their complaint to state that Hummelstown "surely has a utilities easement" would be insufficient. Jackson, 782 A.2d at 1118. While Federal Rule of Civil Procedure 15(a) allows for an amendment as of right at this point, the Court notes that any amendment to this claim would be futile unless Plaintiffs include, through more than a bald assertion, that Defendant Hummelstown owns the gas pipeline and had constructive notice of a dangerous condition for which it could have taken protective measures to prevent the injuries to Plaintiffs' property.

**B. Public Official Immunity**

Next, Defendant O'Keefe, Borough Manager, and Defendant Miller, Mayor of Hummelstown, argue that Plaintiffs' false light and misrepresentation claims against them should be dismissed due to public official immunity.

Public official immunity is absolute; it exempts high public officials from all city suits

arising out of false defamatory statements made within the course of the official's duties or powers. Montgomery v. City of Philadelphia, 140 A.2d 100, 103 (Pa. 1958).  The purpose of the privilege is to protect public officials from the burden and expense of suit itself, based on the public policy that public officials' potentially limitless exposure to lawsuits for statements made while they are merely doing their jobs would work a greater harm than a bar to recovery would have on individuals whose reputations are purposefully damaged by public officials. Id.

To determine whether a public officer qualifies as a high public official, and is therefore entitled to absolute immunity, Pennsylvania law requires examination of the following factors: the nature of the duties, the importance of the office, and particularly, whether the officer has policy-making functions. Id.; Hall v. Kiger, 795 A.2d 497, 500 (Pa. Commw. Ct. 2002). Further, to determine whether remarks made occurred within the scope of the high officials' authority, the Court should examine: "the formality of the forum in which the words were spoken, and the relationship of the legitimate subject of governmental concern to the person seeking damages for the defamatory utterance." Hall, 795 A.2d at 501.

With these standards in mind, the Court finds that Defendants have failed to meet their burden to demonstrate that the privilege applies. First, while mayors have been found to be high public officials, see Lindner v. Mollan, 677 A.2d 1194 (Pa. 1996), thereby partially meeting the test for immunity in regard to Defendant Miller, Defendants' brief does not provide any information from which the Court could determine whether Borough Manager O'Keefe is a high public official, and the Court has found no precedent directly relating to a "Borough Manager."

Second, regarding the requirement that Defendants' statements were made within the scope of their official duties, Defendants state only that "it is clear from Plaintiffs' Complaint

6

that the alleged statements were made in the scope of their official duties." Yet, nowhere in Plaintiffs' complaint is there an explanation of the forum in which the alleged defamatory words were spoken or an explanation of the relationship between the subject of governmental concern and the allegedly defamatory words that were spoken. See Hall, 795 A.2d at 501. Absent such information, the Court cannot agree that "it is clear" Miller and O'Keefe's words were spoken in the scope of their official duties.

Accordingly, Defendant O'Keefe and Defendant Miller's motion to dismiss the claims against them for false light and misrepresentation on the basis of public official immunity is denied.

**C. Attorney's Fees**

Defendants argue that Plaintiffs cannot recover attorney's fees for their claims of negligence against the Borough of Hummelstown and false light against O'Keefe and Mayor Miller, Counts II and III, respectively. Plaintiffs do not respond to this allegation, and are therefore deemed to have waived their argument, however, the Court will proceed with a brief discussion on the merits.

Pennsylvania law requires an express statutory provision or other agreement to entitle an adverse party to recover attorney's fees. Lavelle v. Koch, 617 A.2d 319, 323 (Pa. 1992). For the false light, misrepresentation, and negligence claims, there is no statute, agreement, or established exception that would allow for Plaintiffs to recover attorney's fees even in the event of a successful claim.

Therefore, Plaintiffs' prayer for attorney's fees against Defendant Hummelstown for negligence and Defendants O'Keefe and Miller for false light and misrepresentation is

...

dismissed.

### D. Damages for Pain and Suffering, Humiliation, and Emotional Distress

Defendant Hummelstown next argues that Plaintiffs cannot recover for emotional damages, pain and suffering, or humiliation in an action for property damage. However, because the Court has found that the negligence claim against Defendant Hummelstown should be dismissed, the Court need not consider whether pain and suffering, humiliation, and emotional damages are appropriate.

### E. Supplemental Jurisdiction

Defendants argue that the state law claims should be dismissed on jurisdictional grounds for two reasons. They argue that the state law claims do not arise from the same common nucleus of operative fact as the federal claims, and therefore that the Court lacks supplemental jurisdiction. Defendants also argue that the state law claims predominate the litigation, and therefore that those claims should be heard in state court even if the claims technically meet the nexus requirement of supplemental jurisdiction.

As all parties agree, the Court has original jurisdiction over Plaintiffs' constitutional claims. To that end, Plaintiffs allege § 1983 claims that Defendants Hummelstown, O'Keefe, and Miller violated Plaintiffs' Fourteenth and Fourth Amendment rights when they "chose to prosecute the plaintiffs for the cleanup of a hazard created by the borough itself." (Comp. ¶¶ 2, 9-10.) Defendants also allegedly violated Plaintiffs' First Amendment rights. (Comp. ¶ 43.) Defendant Doe further allegedly violated Plaintiffs' Fourth Amendment rights when he "took the plaintiffs into custody on May 21, 2008 for no valid law enforcement reason." (Comp. ¶ 11.) The state law claims at issue for purposes of this motion to dismiss are the false light and defamation

claims against Defendants O'Keefe and Miller only, since the negligence claim against Defendant Hummelstown has been dismissed.

The Court's ability to exercise supplemental jurisdiction over Plaintiffs' state law claims is determined by 28 U.S.C. § 1367(a), which provides, in relevant part and subject to certain exceptions, that:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). Supplemental jurisdiction over a pendent state claim is available under § 1367(a) only if three requirements are met. Lyon v. Whisman, 45 F.3d 758, 760 (3d Cir. 1995).[1] First, there must be a federal claim that has "substance sufficient to confer subject matter jurisdiction on the court." Id. (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)). In this case, it is agreed that the § 1983 claims establish subject matter jurisdiction. Second, under what is called the "nexus requirement," the federal claims and the pendent state claims must "derive from a common nucleus of operative facts." Lyon, 45 F.3d at 760. Third, leaving the claims' federal or state character aside, the nature of the claims must be such that the party would "ordinarily be expected to try them all in one judicial proceeding." Id. Subject matter jurisdiction over the non-diverse state-law claim exists only when each of these three requirements are satisfied.

---

[1] Section 1367 codified the judicially created concepts of "pendent" and "ancillary" jurisdiction together under the single umbrella of "supplemental jurisdiction." De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 307 (3d Cir. 2003); In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 300-03 (3d Cir. 1998).

Defendants argue that Plaintiffs' state law claims grounded in defamation and false light must be dismissed because the "nexus" requirement is not satisfied. Whether claims derive from a "common nucleus of operative facts" is a fact-intensive inquiry. For example, the Third Circuit has held that a nexus exists between a federal Fair Labor Standards Act ("FLSA") claim and a state Wage Payment & Collection Law ("WPCL") claim when both claims address whether employees should be paid for time spent preparing for and winding down from work. De Asencio, 342 F.3d at 308. By contrast, in Lyon, the Third Circuit held that no nexus existed between a FLSA claim involving a failure to pay overtime wages and common law contract and tort claims involving the underpayment of a bonus. 45 F.3d at 763. In fact, the Third Circuit stated that because there was "so little overlap between the evidence relevant to [the] claims . . . it would be charitable to characterize the relationship of the federal and state claims as involving even a 'loose' nexus." Id.

The Lyon court guided that a district court should look to whether the same facts are necessary to prove both the state and federal claims; in other words, whether the state and federal claims are "merely alternative theories of recovery based on the same acts." Id. at 761 (citing Lentine v. Fringe Employee Plans, Inc., 611 F.2d 474, 494 (3d Cir. 1979). For example, state assault claims in civil rights suits charging police abuses are a common area in which supplemental jurisdiction exists. Id.

Here, the bulk of the facts required to prove false light and defamation will also be required to prove the § 1983 claims. In order for Plaintiffs to prove their § 1983 claim for false arrest and malicious prosecution, they will need to show that Defendants Hummelstown, O'Keefe, Miller, and Day did not have probable cause to suspect that they were the cause of the

nuisance. In other words, the "nucleus of operative facts" regarding the § 1983 claims involves official misconduct and actions occurring after the explosion of the property. The complaint indicates that Plaintiffs will attempt to prove that Defendants lacked probable cause to believe Plaintiffs caused the nuisance because Defendants knew either Defendant Handwerk or UGI created the nuisance. Similarly, the state law claims for defamation and false light stem also stem from the chain of events which occurred after the accident, and it appears that Plaintiffs will attempt to prove that Defendants O'Keefe and Miller made statements indicating that Plaintiffs were the cause of the nuisance, when they knew that information was untrue. Thus, the underlying facts of the state law false light and defamation claims and the federal civil rights claims will be largely the same. While there will also be distinct factual questions of whether Plaintiffs were actually detained, whether their constitutional rights were actually violated, to what extent they were injured by any alleged violation of their constitutional rights, and to what extent their reputations were damaged by false public statements, a significantly overlapping nexus of facts exists.

Nonetheless, § 1367 provides that a district court may decline to exercise supplemental jurisdiction at its discretion even in cases which concern a common nucleus of operative facts. A court may dismiss a claim when "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). The Third Circuit has stated that substantial predomination exists "where a state claim constitutes the real body of a case, to which the federal claim is only an appendage." De Ascencio, 342 F.3d at 309 (dismissing state law claims, though they shared a common nucleus of operative facts with the federal claims, because the novel and complex issues of state law, the significantly higher

number of plaintiffs involved in the state law claims, and different terms of proof required between the claims suggested that the state law claims predominated) (citations omitted). First articulated in United Mine Workers v. Gibbs, 383 U.S. 715 (1966), this is where the differential between the value and of the state and federal claims comes into play (contrary to Plaintiffs' assertion that the comparative value of the state and federal claims is irrelevant). See also Borough of West Mifflin v. Lancaster, 45 F.3d 780 (3d Cir. 1995). Gibbs suggested that pendent jurisdiction should be declined where state issues appear to predominate in terms of proof, comprehensiveness of the remedy sought, or scope of the issues raised. Gibbs, 383 U.S. at 726.

Applying those factors to the facts of this case, the Court finds that the state law claims do not predominate. Here, the state claims do not involve novel or complex areas of state law. No remaining Defendants are involved solely in the state law claims; Defendants O'Keefe, Miller, and Day also have § 1983 claims raised against them. Because separating the remaining state law claims from the federal claims would require Defendants O'Keefe, Miller, and Day to litigate in two forums, the important concerns of judicial economy and fairness would not be served by declining to exercise supplemental jurisdiction over the false light and defamation claims. Finally, the potential difference in the amount of recovery between the claims does not indicate that the state law claims predominate because Plaintiffs do not allege an amount of injury for either the § 1983 or the false light and defamation claims. Therefore, at this time, the Court finds that the facts of this case do not qualify for the "limited exception" of dismissal; there is insufficient evidence to show that the state law claims "substantially predominate." Borough of West Mifflin, 45 F.3d at 789 ("It is important to recognize that this standard was fashioned as a limited exception to the operation of the doctrine of pendent jurisdiction—a

doctrine that seeks to promote judicial economy, convenience, and fairness to litigants by litigating in one case all claims that arise out of the same nucleus of operative fact.") There will not be significant and distinct scientific evidence and expert testimony necessary to prove the state law false light and defamation claims, thus the risk of confusion, delay, and prejudice to the federal defendants upon a jury hearing both the state and federal claims simultaneously does not exist in this case.[2]

### F. Intentional Infliction of Emotional Distress

Plaintiffs concede that they no longer seek to bring a claim for intentional infliction of emotional distress against Defendants. Accordingly, the claim for intentional infliction of emotional distress is dismissed as against Defendants O'Keefe and Miller.

**CONCLUSION**

In conclusion, Defendants' motion to dismiss is granted in part and denied in part. Plaintiffs' negligence claim against Defendant Hummelstown is dismissed. Plaintiffs' claims for attorneys fees on the state law claims and intentional infliction of emotional distress are dismissed. The remaining claims are not dismissed.

An order consistent with this memorandum has been filed.

---

[2]In a separate order, the Court dismissed the state law nuisance claims against Defendants Handwerk and UGI, the only claims brought against those two defendants, for lack of supplemental jurisdiction.